UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

YEFRY VALDEZ,

                 Petitioner,

    -against-

WILLIAM JOYCE, *in his official capacity as District Director of New York, Immigration and Customs Enforcement*; KRISTI NOEM *in her official capacity as Secretary of Homeland Security*; PAM BONDI, *in her official capacity as Attorney General*,

                 Respondents.

------------------------------------- x

MEMORANDUM DECISION AND ORDER

25 Civ. 4627 (GBD)

GEORGE B. DANIELS, United States District Judge:

Petitioner Yefry Valdez seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his ongoing detention by Immigration and Customs Enforcement ("ICE"). (*See* Am. Pet. for Writ of Habeas Corpus ("Am. Pet."), ECF No. 4.) Specifically, Petitioner argues that ICE detained him without "any process much less sufficient process," and there has been no change in circumstances that compels a change in his custody status.[1] (*Id.* at 11.) Petitioner challenges his detention as a violation of the Due Process Clause, the Immigration

---

[1] Respondents argue that Petitioner's detention challenge is premature because he has not exhausted his administrative remedies. (Opp. at 14.) Exhaustion, however, may be excused when "available remedies provide no genuine opportunity for adequate relief . . . and [] in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), as amended (July 24, 2003). Here, Petitioner has raised a constitutional question that could not be properly addressed by the Immigration Judge or Board of Immigration Appeals. *See Quintanilla v. Decker*, No. 21 CIV. 417 (GBD), 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021) (finding exhaustion of the bond and bond appeal process unnecessary since it is "unable to adequately address Petitioner's substantial constitutional question"). Furthermore, as Petitioner notes, he may not be entitled to a bond hearing. (Reply at 5.) Petitioner is, thus, appropriately excused from exhausting his administrative remedies.

and Nationality Act, and the Administrative Procedure Act. Petitioner seeks immediate release from custody.[2] Petitioner's petition for a writ of habeas corpus is GRANTED.

## I. FACTUAL BACKGROUND

In April 2024, Petitioner, a native of the Dominican Republic, entered the United States without inspection. (Am. Pet. at 1.) On April 3, 2024, U.S. Customs and Border Protection ("CBP"), encountered Petitioner near a port of entry in Arizona and took him into custody. (Respondents' Mem. of Law in Opp. to Pet. for a Writ of Habeas Corpus ("Opp."), ECF No. 9, at 2.) Petitioner was charged with removability and served with a Notice to Appear in immigration court. (*Id.*) Later in the day on April 3, 2024, CBP released Petitioner on his own recognizance after processing. (*Id.*) In the 14 months since Petitioner's release from custody, he has timely filed for asylum, obtained employment authorization and worked as an auto mechanic in New York City, and volunteered with his church. (*See* Am. Pet at 3; Reply in Supp. of Am. Pet. for Writ of Habeas Corpus ("Reply"), ECF No. 11, at 1.) Petitioner has no criminal history in any country. (Am. Pet. at 11.)

Petitioner voluntarily attended his first scheduled immigration court date on April 9, 2025, taking a nine-hour bus ride from New York City to Buffalo, New York in order to appear. (*Id.* at 4.) At the April 9, 2025 hearing, Petitioner's case was transferred to the New York City

---

[2] Petitioner also seeks a declaratory judgment from this Court regarding the legality of Respondents' moving to dismiss his pending removal proceedings. (Am. Pet. at 13.) To the extent Petitioner challenges Respondents' motion to dismiss in his case, the matter remains pending before the Immigration Judge for adjudication. (*Id.* at 4.) To the extent Petitioner alleges an unlawful agency policy of moving to dismiss pending removal proceedings in order to initiate expedited proceedings, such action must be instituted in the United States District Court for the District of Columbia. *See* 8 U.S.C. § 1252(e)(3)(A) ("Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia" for determinations of whether a regulation, "or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.").

immigration court. (*Id.*) On June 2, 2025, Petitioner again voluntarily appeared unrepresented for his scheduled hearing at the New York City immigration court. (*Id.*) At this hearing, ICE orally moved to dismiss Petitioner's removal proceedings based on changed circumstances.[3] (*Id.*) The Immigration Judge did not immediately rule on ICE's motion to dismiss, and instead set a new hearing date of July 7, 2025. (*Id.*) Petitioner's removal proceedings and his asylum application remain pending before the immigration court.

Upon leaving Petitioner's June 2, 2025 hearing, ICE arrested Petitioner and took him into custody. (*Id.*) They argue that ICE's Enforcement and Removal Operations "redetermined [Petitioner]'s custody status, determined that he was subject to enforcement action and a flight risk, and decided to detain him pending the resolution of his removal proceedings." (Opp. at 3.)

As Petitioner left the immigration courtroom, he was detained by plainclothes ICE agents. (Am. Pet. at 4.) Petitioner asked why he was being detained, and the ICE agents provided no explanation. (Reply at 4.; Affidavit Declaration from Paige Austin dated June 11, 2025 ("Austin Decl."), ECF No. 11-1, at 1 ("I didn't understand why and I asked him. He said they were agents from ICE and I was detained. They didn't explain why or anything else.").) No change of circumstances has occurred since Petitioner was released by CBP on April 3, 2024. Petitioner has not attempted to flee and has attended all scheduled court appearances. (Am. Pet. at 4.)

ICE initially detained Petitioner at its holding facility at 26 Federal Plaza in New York City. (Opp. at 4.) ICE then transferred Petitioner to a jail in Nassau County, New York. (Am. Pet. at 4.) On June 5, 2025, Petitioner was transferred to the Joe Corley Processing Center in

---

[3] "The ICE attorney identified the expansion of expedited removal as the change." (Declaration of James Lopez dated June 5, 2025, ECF No. 4-1, at 1.) 8 C.F.R. § 239.2(a)(7) allows cancellation of a notice to appear if "[c]ircumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government."

3

Texas, where he remains imprisoned in ICE custody. (Opp. at 3.) The first time Petitioner was able to speak with legal counsel was June 11, 2025, 9 days after his arrest. (Austin Decl. at 1.)

## II. PETITIONER'S DETENTION VIOLATES DUE PROCESS[4]

The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

It is well established that due process protections extend to noncitizens, including those in removal proceedings. *See Zadvydas*, 533 U.S. at 693 ("[T]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores*, 507 U.S. 292, 306 (1993). Even noncitizens have a liberty interest in continued freedom from civil immigration confinement. *See Lopez v. Sessions*, No. 18 CIV. 4189 (RWS), 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018) ("Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment.").

As an initial matter, Respondents make much of the Government's statutory right to detain noncitizens under 8 U.S.C. § 1226(a) in arguing that Petitioner's detention is lawful. (Opp. at 13.) However, the issue here is not the permissibility of immigration detention, but rather the process required in connection with such detention. *See Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d

---

[4] Because this Court finds that Petitioner's detention violates his due process rights, it need not address his claims under the Immigration and Nationality Act and the Administrative Procedure Act.

Cir. 2020) ("Detention during removal proceedings is a constitutionally valid aspect of the deportation process . . . our concern is . . . with the 'important constitutional limitations' on that power's exercise."). "The Government's discretionary authority to detain individuals for immigration purposes does not free it from the constraints of the Constitution." (Reply at 3 (citing *Velasco Lopez*, 978 F.3d at 850).)

The Second Circuit has held that the *Mathews v. Eldridge* balancing test applies when determining the adequacy of process in the context of civil immigration confinement. *Velasco Lopez*, 978 F.3d at 851 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. *Mathews*, 424 U.S. at 335.

As to the first prong of the *Mathews v. Eldridge* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Petitioner was "handcuffed, detained, placed into a holding cell and ultimately transferred halfway across the country to Texas." (Reply at 3.) His liberty interest is clearly established. *See Lopez*, 2018 WL 2932726, at *11; *Saravia*, 280 F. Supp. 3d at 1168.

Next, the risk of erroneous deprivation of Petitioner's liberty interest is high. *See Lopez*, 2018 WL 2932726, at *11 (finding a risk of erroneous deprivation in the context of re-detention absent a change in circumstances, procedure, or evidentiary findings). Respondents offer the unsupported allegation that Petitioner is a flight risk as justification for his re-detention. (Opp. at

5

14.) However, the present allegation by ICE that Petitioner is at risk of flight is directly at odds with the contrary Department of Homeland Security ("DHS") decision to release Petitioner on his own recognizance on April 3, 2024.[5] (Opp. at 2.) Respondents have not articulated any change in circumstances between the time of Petitioner's initial release and his re-detention that now makes him a flight risk.[6] On the contrary, the record evidence shows that in the 14 months that Petitioner has been in the United States, he has voluntarily appeared at two immigration court proceedings in two different locations, timely filed an asylum application, obtained employed, and volunteered in his community. (Reply at 1.) On the present record, there is no indication that Petitioner poses a risk of flight sufficient to justify his re-detention. Petitioner's conduct over 14 months only supports the initial determination by DHS that Petitioner poses no risk of flight.

Respondents made the flight risk determination and then re-detained Petitioner with no notice, explanation, or opportunity for Petitioner to be heard. Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest. *See Mathews*, 424 U.S. at 335; *Lopez*, 2018 WL 2932726, at *11 (finding a risk of erroneous deprivation in the context of re-detention absent a change in circumstances, procedure, or evidentiary findings).

---

[5] CBP made the initial decision to release Petitioner in 2024. (Opp. at 2.) ICE re-determined Petitioner's risk of flight 14 months later in June of 2025. (*Id.* at 3.) Both agencies operate under DHS.

[6] To the extent Respondents argue that the change in the Government administration, and the present administration's enforcement priorities, are changes in circumstances sufficient to make Petitioner a flight risk, this Court rejects that proposition. (Oral Arg. Tr. at 25:7–11, 31:14–20.) The law requires a change in relevant facts, not just a change in attitude. *See Lopez*, 2018 WL 2932726, at *11. Respondents also proffer the argument that Petitioner was released because DHS had no place to incarcerate him. (Declaration of Deportation Officer Chabert Eugene dated June 10, 2025, ECF No. 10, at 2 ("On April 3, 2024, after processing, CBP released Valdez from custody on his own recognizance due to lack of bedspace at the border.").) Respondents' argument has no basis in the law.

Turning to the third *Mathews v. Eldridge* prong, "the Attorney General's discretion to detain individuals under 8 § U.S.C. 1226(a) is valid where it advances a legitimate governmental purpose." *Velasco Lopez*, 978 F.3d at 854. The Government has interests in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690; *see also Velasco Lopez*, 978 F.3d at 854. Petitioner has no criminal history in any country, and Respondents do not argue that he is a danger to the community. (Am. Pet. at 11.) Furthermore, as explained above, Respondents have offered no evidence that Petitioner is a flight risk. Petitioner's conduct in the United States shows the opposite—he has voluntarily attended his scheduled immigration court proceedings, even traveling nine hours by bus to Buffalo to attend his initial appearance. (Am. Pet. at 4.) Petitioner has also established ties in the New York City area where he works as an auto mechanic and volunteers with his church. (*Id.* at 3; Reply at 1.) Respondents have failed to show a significant interest in Petitioner's continued detention. The decision to now detain him is arbitrary and capricious, and an abuse of its discretionary authority.

As Petitioner notes, the process Respondents provided prior to his re-detention was "absolutely none." (Reply at 6.) Given the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to show a significant interest in Petitioner's detention, Petitioner is entitled to more process than he received. *See Mathews*, 424 U.S. at 335. ICE's newfound strategy to attempt to dismiss ongoing immigration court proceedings in support of an argument that they can thereby arrest and detain individuals already paroled before the court is unlawful. ICE cannot manipulate the removal proceedings in its favor by substituting expedited proceedings for immigration proceedings already in progress before the immigration court. It is an abuse of process. In the context of revocation of civil release, "an individual whose release is

sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing." *Villiers v. Decker*, 31 F.4th 825, 833 (2d Cir. 2022); *see also Lopez*, 2018 WL 2932726, at *12 ("Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment."). Once immigration court proceedings are underway, decisions regarding continued release are to be made by the Immigration Judge with the protections of judicial due process.

Respondents' ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights. *See Lopez*, 2018 WL 2932726, at *15 (finding a due process violation when the petitioner was re-detained by immigration authorities with no "deliberative process prior to, or contemporaneous with," the detention).

### III.   CONCLUSION

Petitioner's First Amended Petition for a Writ of Habeas Corpus, (ECF No. 4), is GRANTED. Respondents are ORDERED to immediately release Petitioner from custody. The Clerk of Court is directed to close this case accordingly.

Dated: New York, New York
JUN 1 8 2025

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge